Ross Auto Parts, Inc. v. Commissioner. Ross Paper Mill Supplies, Inc. v. Commissioner.
Ross Auto Parts, Inc. v. Commissioner
Docket Nos. 58171, 58172.
United States Tax Court
T.C. Memo 1957-120; 1957 Tax Ct. Memo LEXIS 138; 16 T.C.M. (CCH) 497; T.C.M. (RIA) 57120; June 28, 1957
*138 Held: 1. Reasonable rental deductions determined. 2. Rental payments made by Ross Paper Mill Supplies, Inc., to Herman and Sadie Ross in 1951 and 1953 are not includible in the gross income of Ross Auto Parts, Inc. Roger K. Powell, Esq., 17 South High Street, Columbus, Ohio, for the petitioners. Arthur Clark, Jr., Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: In the notice of deficiency the respondent determined deficiencies in the following amounts: Ross Auto Parts, Inc. Docket No. 58171 Year
Deficiency
1951
$1,227.01
1952
235.98
1953
834.73
Ross Paper Mill Supplies, Inc., Docket No. 51172 Fiscal Year
Ended
Deficiency
2/29/52
$1,286.45
2/28/53
2,127.01
2/28/54
2,358.97 In an amended answer, respondent alleged *139 additional deficiencies as follows 1951
$827.16
1953
989.38
The following issues remain in dispute: (1) whether respondent erred in determining that deductions for rental expenses by Ross Auto Parts, Inc., and Ross Paper Mill Supplies, Inc., are unreasonable and unallowable to the extent that such expenses exceeded the respective amounts of $3,072 and $4,128 for each of the taxable periods in issue; (2) whether the amount of certain rental payments made by Ross Paper Mill Supplies, Inc., in 1951 and 1953 to Herman and Sadie Ross are includible in the gross income of Ross Auto Parts, Inc. Findings of Fact The petitioner Ross Auto Parts, Inc., (hereinafter referred to as Ross Auto) was incorporated in 1947 to engage in the business of the sale of new and used auto parts, scrap metal, waste paper, and waste paper products. The capital stock of this corporation is owned by Herman E. Ross, his wife, Sadie, and Sadie's brother, Charles Katz, in the respective percentages of 60, 20, and 20. The petitioner Ross Paper Mill Supplies, Inc. (hereinafter referred to as Ross Paper), was organized and incorporated March 1, 1951, to engage in the waste paper and waste paper *140 products business. Thereafter Ross Auto did not engage in that portion of the business. The capital stock of Ross Paper is also owned by Herman Ross, his wife, Sadie, and Charles Katz in the same percentages as is the stock of Ross Auto. Both petitioners kept their books on an accrual basis, Ross Auto for the calendar year and Ross Paper for a fiscal year ended February 28 (or 29), and filed their corporate income tax returns for the taxable periods in issue with the district director (or his predecessor) at Columbus, Ohio. The petitioner corporations are what are commonly known as one-man operations in that, unlike the usual corporation where successors are primed to take over, these are personal businesses based on the personal supervision and control of Herman Ross who makes all the decisions. At the time of the incorporation of Ross Auto, Herman and Sadie Ross owned real property on Sharon Avenue in Zanesville, Ohio, upon the rear of which stood a 60-year old concrete and brick building (hereinafter referred to as the storage building). Herman and Sadie owned other property located on Route 40 about three miles east of Zanesville, upon which was a barn-like corrugated iron *141 building (hereinafter referred to as the East Pike Property). In 1948 Herman and Sadie constructed a brick and concrete building (hereinafter sometimes referred to as the main building), on a front portion of the Sharon Avenue property. This building was constructed at a cost of $68,628.98 and had an estimated useful life of 60 years. Certain features not normally a part of most leased buildings were incorporated in the construction of the main building. Such features are as follows: Normal
Subject
Construction
Property
Ceiling Height
12 feet
15 feet
Thickness of Floors
6 inches
8 inches
Loading Dock
None required
Installed
Canopy Over Dock
None required
Installed
Scales
None required
Installed
Yard Fence
None required
Installed
Yard Paving
7675 s/f
15350 s/f The storage building and the building located on the East Pike property each had a cost basis of $3,000. The Sharon Avenue property is located in a degenerated, declining area that is in the transitional period from residence to commercial use. Due to the hilly terrain it is not a very good area and has poor prospects for future development. The area is not zoned except that the *142 city ordinance provides that a junk yard cannot be operated unless 51 per cent of the property owners within a radius of 1,000 feet sign a waiver. Prior to the incorporation of Ross Paper all of the premises described above were occupied by Ross Auto, which paid rental in the amount of $1,075 per month to Herman and Sadie. On the books and records of Ross Auto this amount was broken down into rental for the main building in the amount of $725 per month plus bonus rental in the amount of one per cent of gross annual sales in excess of $75,000, and $125 per month respectively for the storage building and the East Pike property. After the incorporation of Ross Paper, Ross Auto executed a sublease dated March 1, 1951 wherein it sublet a portion of the premises theretofore occupied by it to Ross Paper for a term of 4 years and 5 months. The sublease provided the following terms for payment: * * *
"* * * yielding and paying therefor at the principal place of business of said Lessor, the sum of Forty Eight Hundred Dollars ($4,800.00), payable in monthly installments of Four Hundred Dollars ($400.00) each in advance on the first day of each and every calendar month for the period *143 of March 1, 1951, to February 29, 1952, and yielding and paying for the balance of said term for the period of March 1, 1952, to July 31, 1955, the sum of Twenty Thousand Dollars ($20,000.00), payable in monthly installments of Five Hundred Dollars ($500.00) each in advance on the first day of each and every calendar month during said term. "In addition to the aforesaid rental and not in any manner as a credit, charge, or limitation upon the aforesaid covenant, to pay rent, the Lessee hereby agrees to pay to the Lessor a sum equal to one per cent (1%) of the aggregate gross sales per annum in excess of the sum of Seventy Five Thousand Dollars ($75,000.00) per annum. * * *" * * *
Under the terms of the sublease Ross Paper occupied the East Pike property and also 55 per cent of the main building and other real property on Sharon Avenue. After the organization of Ross Paper, Ross Auto paid net rentals of $125 per month for the storage building and the balance of the rent due under the terms of the original lease for the main building after payment thereon by Ross Paper ( $725 - $425) of $300, plus bonus rental amounting to one per cent of its gross annual sales in excess of *144 $75,000. During the years in issue Ross Auto reported and claimed deductions for rental paid or accrued to Herman and Sadie in the following amounts: 1951
$7,389.85
1952
4,200.00
1953
6,719.82
During the taxable years in issue Ross Paper reported and claimed deductions for rental paid or accrued to Herman and Sadie in the following amounts: Fiscal Year
Ended
2/29/52
$8,721.50
2/28/53
8,024.12
2/28/54
9,625.72
In addition to the amounts paid by the petitioner corporations to Herman and Sadie, the corporations also paid all repairs, taxes, and insurance. The income tax returns of Ross Auto reflect no rental income during any of the taxable years in issue. The appraisal report of an expert appraiser who personally examined the property and testified for the petitioners with respect to the reasonable annual rental of the property in dispute is as follows: Main Building Rental Value Return
Reporduction
Accrued
Depreciation
Per
Recapture
Cost, New
Depreciation
Value
Cent
Per Cent
Rent
Main Building
$93,060
$9,486
$83,574
7
4
$ 9,193
Yard Paving
9,210
957
8,253
7
4
908
Scales
4,900
1,470
3,430
7
5
412
Yard Fence
1,660
480
1,180
7
5
142
Total
$10,655
*145 Return on land
$4,200 X.07 =
$ 294
Rental value of improvements
10,655
Total
$10,949
Storage Building Rental Value Storage Building
$6,200 X.11 =
$682
Land
2,300 X.07 =
161
Total
$843
East Pike Property Rental Value Building Value
$4,300 X.09 =
$387
Land Value
900 X.06 =
54
Total
$441
Real Property on Sharon Avenue Rental Value $1,900 X.07 =
$133
The appraiser determined the rental value of the subject properties by comparison with the going rate of similar properties. The following amounts were determined as reasonable annual rentals by this comparison method: Main Building
$10,900
Storage Building
612
East Pike Property
470
Real Property on Sharon Avenue
460
By correlating the rental determined by the two methods indicated above, and adjusting for other factors, the appraiser determined that the following rentals were proper as of December 10, 1955: Main Building
$900 per month
Storage Building
55 per month
East Pike Property
40 per month
Real Property on Sharon
Avenue
65 per month
The annual rental expenses incurred for *146 such properties by petitioners during the period in issue are unreasonable and unallowable to the extent that such expenses exceeded the following amounts: Ross Auto
Year
1951
$7,000
1952
5,870
1953
5,870
Ross Paper
Fiscal Year
Ended
2/29/52
$6,750
2/28/53
6,750
2/28/54
6,750
Opinion The first issue in this case is factual and involves a determination of the reasonable rental for the properties owned by Herman and Sadie which were occupied by petitioners. Respondent determined that petitioners had paid rental in excess of reasonable amounts therefor and disallowed such excess amounts which were claimed by petitioners as deductions for rental expense. The petitioners contend that the rentals paid were reasonable in amount, and in support of their contention have introduced testimony and an appraisal report of an expert. In determining the reasonable rental of the properties the expert first determined the rental which comparable properties were returning. He next determined the value of the properties by use of the reproduction cost less depreciation method and the amount of rental an investor would require before investing in such property. The *147 expert then made his final determination of reasonable rental by correlating the values determined by these methods and adjusting for various other factors present. The respondent, on the other hand, introduced no evidence as to the reasonable rental value of the properties. His sole argument is that the expert's opinions were based upon reproduction cost less depreciation and as such they must be rejected as not credible, citing . That case involved appraisals made in 1924 and 1925 to determine the value of property as of March 1, 1913. We held that we need not rely upon opinion evidence based solely upon retrospective appraisals. See also , and . In the instant case the appraisal was compiled for the current period. The appraiser was familiar with Zanesville and had made many appraisals in that area. In support of his conclusions there was placed in evidence an appraisal report consisting of analyses of the region, immediate locations and buildings thereon, together with descriptions thereof and the inferences and conclusions properly *148 drawn therefrom. His estimates of value were based not only upon reproduction cost less depreciation but also other value-influencing factors. In view of these facts, and since no evidence tending to prove reasonable rental was produced by respondent, we hold that the petitioners have overcome the prima facie correctness of the respondent's determination, which holding is reflected in our findings of fact. Cf. ; ; . The second issue involves the amounts of bonus or percentage of sales rental paid by Ross Paper. In an amended answer the respondent alleged that the amounts of such bonus rental although paid to Herman and Sadie are includible in the gross income of Ross Auto since Ross Paper was obligated to pay such rental to Ross Auto under the express provisions of the sublease executed between them. Since this issue was raised in an amended answer to the petition, the burden of proof with respect to such issue is upon the respondent. . Preliminarily it is to be noted *149 that respondent has not included in the gross income of Ross Auto the entire amount of rental paid by Ross Paper. This treatment is not inconsistent since, had Ross Paper paid its proportionate part of the fixed rental to Ross Auto instead of to Herman and Sadie, Ross Auto would have been required to pay Herman and Sadie the entire amount of fixed rental on the property and would have been entitled to a deduction for such entire amount. With respect to the amount paid by Ross Paper as bonus rental, however, respondent argues that, under the terms of the sublease, Ross Auto was only required to pay a percentage of its own gross sales and was not obligated to pay its lessors a percentage of the gross sales of Ross Paper, its sublessee; that the percentage of gross sales paid by Ross Paper constituted income to Ross Auto for which Ross Auto had no corresponding rental deduction; and that Ross Auto cannot escape taxation on this income by directing receipt thereof to its "principal stockholders." It is petitioners' position, however, that Ross Auto had no right to any of the payments, including the bonus rental, from Ross Paper. On brief they state: "This issue is simply answered by *150 the testimony [by petitioners' accountant [1]] that under agreement by the parties all rentals payable under the sublease were payable and paid to Herman and Sadie Ross as rentals for their property." Respondent objected to the testimony of petitioners' accountant on the ground that the written lease was the better evidence of the agreement of the parties and, upon being overruled, did not undertake to cross examine petitioner's witness on this subject. We agree that the written lease is the better evidence of its terms. The testimony objected to, however, related to *151 another agreement, presumably oral, purporting to modify or change the provisions of the sublease as well as the terms of the original lease between Ross Auto and the lessors, Herman and Sadie. Though the evidence is meager, it is reasonable to assume that all the parties involved, including Herman and Sadie, agreed that Ross Paper might pay the rentals required under its sublease from Ross Auto directly to Herman and Sadie rather than Ross Auto and that Ross Auto would thereafter pay Herman and Sadie only its proportionate part of the fixed rental plus a percentage of its gross sales. This is what was done. In passing, it might be noted that in acceding to this arrangement Herman and Sadie, in effect, were agreeing to a $750 reduction in the overall rental of their properties, since there were two $75,000 exemptions from gross sales instead of one. While neither of the parties hereto have discussed the possible application of the Ohio statute of frauds (Section 8621, Page's Ohio General Code, Ann. (1938); section 1335.05, Page's Ohio Revised Code, Ann. (1953)), it may be noted that agreements *152 modifying the rent provisions and other terms of a lease have been held not to be "leases" and hence not required to conform to the statute of frauds and conveyances, including section 8621 of the . Moreover, if it be assumed that the agreement such as we have here constituted a new leasing agreement, such agreement, though unenforceable under the Ohio statute relating to leasehold interests and agreements not to be performed within one year, having been acted upon, payments made in accordance therewith, and the respective parties put in possession and occupancy of the property, was not invalid. See , . See also Thompson on Real Property, vol. 2, sec. 1368. , relied upon by respondent is not applicable.
We hold that respondent has not sustained his burden with respect to this issue and that the amount of the bonus rentals paid by Ross Paper under the terms of the sublease during the period in issue is not includible *153 in the gross income of Ross Auto. Decisions will be entered under Rule 50. Footnotes
1. The accountant's testimony to which petitioner has referred is as follows: Q. Did it [Ross Paper] also pay a percentage of its gross sales? A. It did, one per cent of the sales in excess of $75.000. Q. And those payments were made - A. To Herman and Sadie Ross. Q. Was that in accordance with the agreement of the parties? A. It was - MR. CLARK: Objection, Your Honor. The agreement of the parties is evidenced by a written lease and this question calls for evidence which is not the best evidence. The best evidence is the written document. THE COURT: It was paid - I will overrule the objection.↩